US DISTRICT COURT
WESTERN DIST ARKANSAS
FILED

DEC 1 5 2015

DOUGLAS F. YOUNG, Clerk
By
         Deputy Clerk

IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

CHRIS D. EZELL, as parent and next
friend of his minor daughter, K.E.;

JAMES LYLES and DONNA LYLES,
as parents and next friends of their
minor daughter, E.L.; and

WES R. MABRY, as parent and next
friend of his minor daughter, M.M.                                              PLAINTIFFS

V.                           CASE NO. 5:15-CV-05161

FAYETTEVILLE PUBLIC SCHOOLS
a/k/a FAYETTEVILLE SCHOOL
DISTRICT; DR. PAUL HEWITT in his
official capacity as Superintendent of
Fayetteville Public Schools;
and DOES 1 through 50                                                           DEFENDANTS

## MEMORANDUM OPINION AND ORDER

Currently before the Court are Defendants' Motion for Partial Dismissal of Complaint (Doc. 7) and Motion to Strike Immaterial and Impertinent Allegations in the Complaint (Doc. 9). The Court heard argument on the Motions during the parties' December 2, 2015 Case Management Hearing, and took them under advisement at that time. Both Motions have been fully briefed and are now ripe for decision. For the reasons discussed below, Defendants' Motion for Partial Dismissal (Doc. 7) is **GRANTED IN PART AND DENIED IN PART**. The Motion is **GRANTED** with respect to Plaintiffs' request for damages under Title IX. The Motion is **DENIED** with respect to Plaintiffs' request for damages under the Equal Protection Clause and 42 U.S.C. § 1983. Defendants' Motion to Strike (Doc. 9) is **GRANTED IN PART AND DENIED IN**

1

**PART**, and all references to 34 C.F.R. § 106.3(a) shall be stricken and replaced by virtue of this Order with references to 34 C.F.R. § 106.3(c).

## I. BACKGROUND

Plaintiffs Chris Ezell, James Lyles, Donna Lyles, and Wes Mabry appear in this case as parents and next friends of their minor daughters, all of whom play softball at Fayetteville High School. Plaintiffs allege that the Defendants, Fayetteville Public Schools a/k/a Fayetteville School District, Superintendent Dr. Paul Hewitt, and Does 1 through 50 (collectively, "the District") have discriminated against their daughters in violation of both Title IX and the Equal Protection Clause of the Fourteenth Amendment. Specifically, Plaintiffs' Complaint, filed on July 14, 2015, alleges a series of inequalities between Fayetteville High School's softball program and its baseball program. It further alleges that the District discriminates against Plaintiffs' daughters and other female student-athletes more broadly. The bulk of the factual allegations supporting Plaintiffs' claims are laid out in eight subsections of Paragraph 30 of their Complaint. Each subsection begins by alleging general discrimination against their daughters and other female student-athletes in a particular arena—for example in the provision of training facilities and services—and then continues to list specific examples of that discrimination. Notably for the purposes of the District's Motion to Strike, the Complaint also accuses the District of violating 34 C.F.R. § 106.3(a), a regulation promulgated pursuant to Title IX.

Plaintiffs seek declaratory relief and a permanent injunction restraining the District from continuing their allegedly discriminatory policies and requiring them to implement a plan to comply with Title IX and the Fourteenth Amendment. They also ask

the Court to award them damages for expenses they incurred for equipment and supplies that would not have been incurred by parents of boys similarly situated, and for their daughters' reduced opportunities to obtain college athletic scholarships.

On August 12, 2015, the District filed the motions currently pending before the Court, as well as their Answer generally denying Plaintiffs' allegations. Their Motion for Partial Dismissal argues that the Complaint fails to state a claim for which damages can be granted. Their Motion to Strike contends that the Complaint's reference to 34 C.F.R. § 106.3(a) is immaterial and impertinent because the regulation pertains to recipients that have already been found to be in violation of Title IX by the Department of Education. As the District has never been found to be in violation of Title IX, they accuse Plaintiffs of taking "gratuitous pot shots against the employees and patrons of the Fayetteville school system." (Doc. 9, p. 2).

In response to the Motion for Partial Dismissal, Plaintiffs maintain that they have made out a facially plausible claim entitling them to compensatory relief under Title IX and the Equal Protection Clause. In response to the Motion to Strike, they state that the reference to 34 C.F.R. § 106.3(a) was a typographical error. The correct citation, they clarify, should have been to 34 C.F.R. § 106.3(c), which does not refer to recipients already found to be in violation of Title IX. Plaintiffs have offered to amend their Complaint to correct the citation.

## II. LEGAL STANDARD

To survive the District's Motion for Partial Dismissal, Plaintiffs' Complaint must present "a short and plain statement of the claim that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The intention of this is to "give the defendant fair notice of what

the . . . claim is and the grounds upon which it rests." *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). In evaluating the sufficiency of the Complaint, the Court assumes that "all factual allegations in the pleadings are true and interpret[s] them in the light most favorable to the nonmoving party." *Bell v. Pfizer, Inc.*, 716 F.3d 1087, 1091 (8th Cir. 2013) (internal quotation omitted).

Even so, the Complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* (quoting *Twombly*, 550 U.S. at 555). In short, "the pleading standard that Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the defendant-unlawfully-harmed-me accusation." *Id.* (quoting *Twombly*, 550 U.S. at 555). When considering a motion to dismiss, the Court ordinarily does not consider matters outside the pleadings, Fed. R. Civ. P. 12(d), but may consider exhibits attached to the complaint and documents that are necessarily embraced by the pleadings. *Mattes v. ABC Plastics, Inc.*, 323 F.3d 695, 697 n.4 (8th Cir. 2003).

With respect to the Motion to Strike, Federal Rule of Civil Procedure 12(f) allows the Court to "strike from a pleading an insufficient defense or any redundant, immaterial,

4

impertinent, or scandalous matter." It may do so on its own initiative or upon timely motion from a party. *Id.*

## III. DISCUSSION

### A. The District's Motion For Partial Dismissal

The District's Motion for Partial Dismissal asks this Court to find that Plaintiffs have failed to plausibly allege that they are entitled to damages on their Title IX and Equal Protection claims. Although the Motion treats Plaintiffs' causes of action identically for the purposes of this issue, the Court finds that the inquiry is analytically distinct for each. Accordingly, the Court will address them separately, first determining whether Plaintiffs have plausibly alleged a Title IX violation entitling them to damages, and then answering the same question with respect to the Equal Protection Clause and 42 U.S.C. § 1983.

#### 1. Damages Under Title IX

The Supreme Court has reviewed cases involving a Title IX plaintiff's ability to obtain damages on four occasions. The parties disagree about the nuances of the legal standard resulting from these cases, and also about whether the Eighth Circuit's latest interpretation of the standard is still binding upon this Court. The Court ultimately finds that in order to recover damages, a Title IX plaintiff in the Eighth Circuit must provide the Title IX recipient with actual notice of the alleged discriminatory act, and the recipient must respond with at least deliberate indifference. This holds true even where the allegation is premised on the recipient's own decision, and not the conduct of a third party. A thorough review of the case law is necessary to explain why the Court reaches this conclusion.

5

The Supreme Court first recognized the availability of damages under Title IX in *Franklin v. Gwinnett County Public Schools*, 503 U.S. 60 (1992). The plaintiff in *Franklin* was a high-school student who sued her school district under Title IX after being subjected to repeated sexual harassment from a teacher. *Id.* at 63-64. She additionally alleged that the school district became aware of the harassment, but took no action to stop it. *Id.* After the district court and the circuit court dismissed her complaint on the ground that Title IX did not authorize an award of damages, the Supreme Court reversed. It explained that damages are available to Title IX plaintiffs who allege "intentional discrimination." *Id.* at 75.

As the *Franklin* Court explained, this intentional-versus-unintentional distinction is rooted in the Supreme Court's Spending Clause jurisprudence. When Congress imposes conditions on the acceptance of federal funds pursuant to its Spending Clause power, a recipient accepting the funds must have notice of what those conditions are. "The point of not permitting monetary damages for an unintentional violation [of Spending Clause legislation] is that the receiving entity of federal funds lacks notice that it will be liable for a monetary award." *Id.* at 74 (citing *Pennhurst State Sch. and Hosp. v. Halderman*, 451 U.S. 1, 28-29 (1981)). On the other hand, "[i]n cases where intentional discrimination has been shown, there can be no question as to what the recipient's obligation under the program was and no question that the recipient was aware of that obligation." *Guardians Ass'n v. Civil Service Comm'n of City of New York*, 463 U.S. 582, 597 (1983) (opinion of J. White). *Franklin* thus established that discriminatory intent "is the **sine qua non** to compensatory relief to any type of Title IX violation." *Horner v. Ky. High Sch. Athletic Assoc.*, 206 F.3d 685, 689 (6th Cir. 2000) (emphasis in original).

Six years later, the Supreme Court was faced for the first time with applying the intentional discrimination standard that it announced in *Franklin*. The plaintiff in *Gebser v. Lago Vista Independent School District*, 524 U.S. 274 (1998), as in *Franklin*, was a high-school student who sued her school district under Title IX after one of her teachers sexually harassed her. Unlike *Franklin*, however, the *Gebser* plaintiff did not allege that the school district knew about the harassment and failed to address it. Justice O'Connor, writing for the Court, affirmed the circuit court's dismissal, holding that the plaintiff's claim could not survive because she did not allege that: (i) the school district had *actual notice* of the harassment and; (ii) that it responded with *deliberate indifference*. *Id.* at 277 (emphasis added). A year later in *Davis Next Friend LaShonda D. v. Monroe County Board of Education*, 526 U.S. 629 (1999), the Supreme Court applied the *Gebser* actual-notice-and-deliberate-indifference test to a case involving student-on-student sexual harassment.

There are two general ways to understand the *Gebser* and *Davis* cases. For ease of reference, the Court will refer to the first as the "broad understanding" and the second as the "narrow understanding," though these labels somewhat oversimplify the underlying issues. The District essentially asks this Court to adopt the broad understanding, arguing that the actual-notice-and-deliberate-indifference test announced in *Gebser* applies to *all* Title IX damages actions, not only those derived from third parties' conduct, like sexual harassment cases. This understanding of *Gebser* and *Davis* finds support from *Gebser*'s analysis of Title IX's express administrative remedy. The administrative remedy requires actual notice of a violation and a chance

for voluntary compliance before enforcement proceedings can commence. *Id.* at 288-289. In light of this express remedial procedure, *Gebser* explains that

> It would be unsound, we think, for a statute's *express* system of enforcement to require notice to the recipient and an opportunity to come into voluntary compliance while a judicially *implied* system of enforcement permits substantial liability without regard to the recipient's knowledge or its corrective actions upon receiving notice.

*Id.* at 289 (emphasis in original).

Indeed, seizing on this language from *Gebser* is exactly what the Eighth Circuit did in *Grandson v. University of Minnesota*, 272 F.3d 568 (8th Cir. 2001). There, an individual and a class, separately, sued the University of Minnesota over its Duluth campus's allegedly discriminatory athletics policies. These allegations were based not upon a third party's conduct as in *Gebser*, but instead upon the recipient's own decisions. Similar to the instant case, the class's complaint "recited at length alleged disparities in the resources and opportunities afforded to the women's and men's athletic programs . . . ." *Id.* at 575. Adopting the broad understanding of *Gebser* and *Davis*, the Eighth Circuit held that because there was no "allegation of prior notice of their complaints to appropriate UMD officials, no allegation of deliberate indifference by such officials, and no allegation they had afforded UMD a reasonable opportunity to rectify the alleged violations," the plaintiffs were not eligible for damages. *Id.* (relying on *Gebser*). The court dismissed the individual plaintiff's damages claim for the same reason. *Id.* at 576 ("When an individual plaintiff such as Grandson claims money damages from a specific Title IX violation, such as failing to award her a soccer scholarship, *Gebser* requires prior notice to a university official with authority to address the complaint and a response demonstrating deliberate indifference to the alleged

violation."). *Grandson*, then, stands for the proposition that the Eighth Circuit understands *Gebser* and *Davis* broadly: It held that the *Gebser* test applies even when a recipient's own decisions, not a third party's, are at issue.

Plaintiffs ask this Court to disregard *Grandson* and to adopt the narrow understanding, arguing that the *Gebser* test applies only when a plaintiff is alleging a Title IX violation derived from a third-party's discriminatory conduct. This understanding is supported by case law from other circuits, and by a careful analysis of the reasoning underlying the *Franklin*, *Gebser*, and *Davis* line of cases.

The purpose of the *Gebser* test is to require a Title IX plaintiff to prove that the recipient itself, and not merely a third-party affiliate of the recipient, acted with the discriminatory intent required by *Franklin*. See *Davis*, 526 U.S. at 642 ("[T]he misconduct of the teacher in *Gebser* was not treated as the grant recipient's actions. Liability arose, rather, from an official decision by the recipient to not remedy the violation.") (quotation and citation omitted). Absent proof of actual notice and deliberate indifference in such cases, a Title IX plaintiff has at most proven that a third-party harasser intentionally discriminated against them. This is insufficient under *Franklin*, which requires that the recipient itself intentionally discriminate in order to satisfy the Spending Clause notice issue highlighted by that case. But, in the context of a case premised on a recipient's own allegedly discriminatory decision, the Spending Clause issue simply does not arise: The recipient's own decision is by definition an intentional act attributable to the recipient.

Given this principled distinction, it is unsurprising that *Gebser* expressly limits its holding by declaring that it applies only "[i]n cases like this one *that do not involve*

*official policy of the recipient entity.*" 524 U.S. at 290 (emphasis added). *Davis's* explication of *Gebser* supports this view as well. *Davis* describes *Gebser's* test as being one way to prove intentional discrimination, not as being exclusively synonymous with intentional discrimination. *See* 526 U.S. at 642 (stating that the district in *Gebser* "intentionally acted in clear violation of Title IX by remaining deliberately indifferent"); at 643 ("We consider here whether the misconduct identified in *Gebser*—deliberate indifference to known acts of harassment—amounts to an intentional violation of Title IX . . . ."); *see also Jackson v. Birmingham Bd. of Educ.*, 544 U.S. 167, 173 (2005) ("We have also held that the private right of action encompasses intentional sex discrimination in the form of a recipient's deliberate indifference . . . ."); at 182 (declaring that "deliberate indifference constitute[s] intentional discrimination"); at 183 ("[R]etaliation presents an even easier case than deliberate indifference. It is easily attributable to the funding recipient, and it is always—by definition—intentional."). It follows that if deliberate indifference is but one way to prove intentional discrimination, then there are some cases to which it is not necessary. Namely, according to *Gebser* itself, those involving official policy.

Explicitly or implicitly adopting the narrow understanding, the Seventh, Tenth, Ninth, and Fifth Circuits have all declined to apply *Gebser's* actual-notice-and-deliberate-indifference test where a Title IX plaintiff alleged discrimination based on a recipient's own decision. In *Parker v. Franklin County Community School Corporation*, 667 F.3d 910 (7th Cir. 2012), the plaintiffs alleged that the defendants violated Title IX by scheduling girls' high-school basketball games during less favorable times than boys' games. The *Parker* Court did not, however, proceed by analyzing whether the

defendants had actual notice that the scheduling of girls basketball games was discriminatory, and responded with deliberate indifference. Instead, it noted that the case "may present an 'even easier case than deliberate indifference' because the actions at issue here are 'easily attributable to the funding recipient,' and thus, 'always—by definition—intentional.'" *Id.* at 921 (quoting *Jackson*, 544 U.S. at 183-84).

In *Simpson v. University of Colorado Boulder*, 500 F.3d 1170, 1174-79 (10th Cir. 2007), the plaintiffs alleged that they were sexually harassed as a result of the University's football recruiting policies, which assigned prospective student-athletes to female campus "Ambassadors" who were supposed to show the recruits a "good time." *Id.* at 1173. Because the sexual harassment resulted from conduct attributable to the University itself—its recruitment policy—the Tenth Circuit stated that "[w]e do not think that the notice standards established for sexual-harassment claims in *Gebser* and *Davis* necessarily apply in this circumstance." *Id.* at 1177.

In perhaps the most forceful rebuke of the broad understanding of *Gebser*, the Ninth Circuit in *Mansourian v. Regents of the University of California* held that female students who were denied the opportunity to participate on the wrestling team did not have to provide notice to the University before bringing suit. 602 F.3d 957, 968 (9th Cir. 2010). It found that the defendant's offered "analogy between this case and [*Gebser* and *Davis*] is not apt" because universities' decisions with respect to athletics constitute official policy, "easily attributable to the funding recipient" and thus "not covered by *Gebser's* notice requirement." *Id.* at 966, 968 (quotation omitted). Similarly in *Pederson v. Louisiana State University*, 213 F.3d 858, 882 (5th Cir. 2000), the Fifth Circuit held that female athletes who were provided unequal athletic opportunities at LSU could

recover damages because LSU's discrimination was intentional. Rejecting LSU's reliance on *Gebser* and *Davis*, it explained:

> [T]he requirement in the sexual harassment cases—that the academic institution have actual knowledge of the sexual harassment—is not applicable for purposes of determining whether an academic institution intentionally discriminated on the basis of sex by denying females equal athletic opportunity. In the sexual harassment cases, the issue was whether the school district should be liable for the discriminatory acts of harassment committed by its employees. These cases hold that school districts must themselves have actual discriminatory intent before they will be liable for the discriminatory acts of their employees. In the instant case, it is the institution itself that is discriminating. The proper test is not whether it knew of or is responsible for the actions of others, but is whether Appellees intended to treat women differently on the basis of their sex by providing them unequal athletic opportunity

213 F.3d at 882.

While the Court finds the reasoning behind the narrow understanding of *Gebser* and *Davis* to be persuasive, it is not deciding the instant case on a blank slate. Although the other circuit courts examining this issue have concluded differently, the Eighth Circuit has held that the *Gebser* test applies to all Title IX damages actions, including those alleging intentional discrimination based on a recipient's own decision. *Grandson*, 272 F.3d at 568.

Plaintiffs nonetheless insist that the Court can disregard *Grandson* in light of the later-decided *Jackson* Supreme Court case. 544 U.S. 167 (2005). The plaintiff in *Jackson* was the coach of a girls' high-school basketball team who sued the Birmingham Board of Education after he was allegedly fired in retaliation for complaining about sex discrimination affecting his team. *Id.* at 171. In holding that retaliation can constitute sex discrimination under Title IX, and that the plaintiff could be

awarded damages, the Supreme Court clearly defined (for the first time in this line of cases) what it meant by "intentional discrimination."

> Retaliation against a person because that person has complained of sex discrimination is another form of intentional sex discrimination encompassed by Title IX's private cause of action. Retaliation is, by definition, an intentional act. It is a form of "discrimination" because the complainant is being subjected to differential treatment.

*Id.* at 174-75.

Plaintiffs contend that *Jackson's* definition of intentional discrimination is irreconcilable with the broad understanding of *Gebser* and *Davis* adopted by the Eighth Circuit in *Grandson*. Like the retaliation in *Jackson*, Plaintiffs contend that the decisions made by the District are by definition intentional acts, and that they are a form of discrimination because the decisions subject their daughters to differential treatment. It follows, according to Plaintiffs, that *Jackson's* straightforward definition of intentional discrimination negates *Grandson's* holding that proving intentional discrimination requires more—a showing of actual notice and a response of deliberate indifference.

Though Plaintiffs' line of reasoning is somewhat persuasive, *see Mansourian*, 602 F.3d at 967-68, there are other aspects of *Jackson* that give this Court pause. For example, *Jackson* refers to *Gebser's* holding as being "that an appropriate official of the funding recipient must have actual knowledge of discrimination and respond with deliberate indifference before a private party may bring suit," perhaps lending some credence to the broad interpretation. 544 U.S. at 181. Additionally, allowing the plaintiff in *Jackson* to proceed on his damages claim is arguably consistent with the *Gebser* test: The plaintiff provided actual notice to the school board of its disparate treatment of the girls' basketball team, and the school board responded by firing him—a response

that goes beyond deliberate indifference. If the facts of *Jackson* were such that the plaintiff had not notified the defendant of a discriminatory act, this Court would be much more likely to find that it negates *Grandson*. As it stands, however, the Court is not convinced that it does, and so it will apply the *Gebser* test as *Grandson* interpreted it.

Applying the test to the instant case, Plaintiffs have not pled any facts indicating that the District had prior notice of their complaints. Nor have they pled facts indicating that the District responded to any such notice with deliberate indifference. Plaintiffs have therefore failed to state a claim for damages upon which relief can be granted under Title IX. The District's Motion to Dismiss Plaintiffs' Title IX claim for damages is, therefore, **GRANTED**.[1]

### 2. Damages Under the Equal Protection Clause and § 1983.

The Equal Protection Clause of the Fourteenth Amendment to the United States Constitution provides that "[n]o State shall make or enforce any law which shall . . . deny to any person within its jurisdiction the equal protection of the laws." This protection and others are enforced by affected persons through 42 U.S.C. § 1983, which provides that

> [e]very person who, under color of [law] . . . of any State . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

---

[1] Plaintiffs also argue that the *Gebser* test is satisfied because the District stipulated that "the decisions made by its employees and administrators throughout the history of the athletic program were made with 'deliberate' or 'volitional' intent with all of their mental faculties in place." (Doc. 19, p. 2). This stipulation, however, does not satisfy *Gebser's* requirement that the recipient have actual notice of the alleged discrimination and then respond with deliberate indifference to it. Consequently, the stipulation has no effect on the Court's conclusion.

Since § 1983, unlike Title IX, provides litigants with an express remedy at law, no special test is needed to determine whether Plaintiffs can recover damages if the District violated their daughters' constitutional rights. Still, while distinct, the Title IX and Equal Protection inquiries are analytically parallel, as only acts of intentional discrimination can violate the Equal Protection Clause. See Pers. Adm'r of Mass. v. Feeney, 442 U.S. 256 (1979) (upholding a facially neutral policy that had a disparate impact on women because the law had no discriminatory purpose); Washington v. Davis, 426 U.S. 229 (1976) (same, but with respect to race). The District accordingly argues that the phrase "intentional discrimination" in the Equal Protection context requires Plaintiffs to plausibly allege that they acted with animus, and that Plaintiffs have failed to do so.

The Court disagrees. It finds that Plaintiffs have plausibly alleged that the District's policies constitute disparate treatment based on facially gender-based classifications. As a result, the District's policies are subject to heightened scrutiny under black-letter Equal Protection law.

When enforcing the Equal Protection Clause, courts apply heightened scrutiny to government classifications that are based on certain protected characteristics. Where such classifications exist, proving that they violate the Equal Protection Clause does not require a showing of animus. Quite the opposite, in the case of gender classifications, the burden is on the state actor to prove that the classification is substantially related to an important government interest. E.g., U.S. v. Virginia, 518 U.S. 515 (1996) (rejecting state's offered justifications for banning women from military college); Miss. Univ. for Women v. Hogan, 458 U.S. 718 (1982) (rejecting state's justifications for single-sex

admissions policy to school of nursing); *Craig v. Boren*, 429 U.S. 190, 197 (1976) ("[C]lassifications by gender must serve important governmental objectives and must be substantially related to achievement of those objectives."). The offered justification must, additionally, be exceedingly persuasive. 518 U.S. at 533; 458 U.S. at 724 ("[T]he party seeking to uphold a statute that classifies individuals on the basis of their gender must carry the burden of showing an exceedingly persuasive justification for the classification.").

This standard has some nuance in the context of athletics. As the Supreme Court explained in *Feeney*, "[t]he equal protection guarantee of the Fourteenth Amendment does not take from the States all power of classification." *Feeney*, 442 U.S. at 271. "Certain classifications, however, in themselves supply a reason to infer antipathy." *Id.* at 272 (listing race and gender). This inference justifies the application of heightened scrutiny to the classification. In the context of athletics, however, the classificatory decision to separate men and women—or boys and girls—into gendered teams does not itself *necessarily* warrant heightened scrutiny. Still, policies made or enforced by a state actor subsequent to that classification may. As *Communities for Equity* explained while addressing the same argument now made by the District:

> Disparate treatment based upon facially gender-based classifications evidences an intent to treat the two groups differently. [U.S. v. Virginia] imposes no requirement upon [plaintiffs] to show that an evil, discriminatory motive animated [Michigan High School Athletic Association's] scheduling of different athletic seasons for boys and girls. The cases that MHSAA cites to the contrary . . . are inapposite because they involve facially *neutral* classifications, rather than facially *gender-based* classifications. . . .
>
> MHSAA asserts, however, that the only facial classification at work in this case was the original decision to have separate high school sports teams for boys and girls. Once the legality of separate programs has been

conceded, MHSAA argues, issues regarding the implementation of those programs do not classify the players by gender. Conceding that separating boys and girls sports *is* a facial classification, MHSAA claims that other issues (scheduling, uniforms, coaches, etc.) are not prohibited facial classifications. If we were to find that any such difference between girls and boys sports is a facial classification, MHSAA argues, this would lead to absurd results. Facial classifications engender a presumption of discriminatory purpose, and MHSAA asserts that this is because there is typically a reason to infer antipathy—a reason, it claims, not present here.

MHSAA's characterization of the issue, however, misses the point. The issue is not whether *any* difference between male and female high school sports is deserving of being classified as a case of disparate treatment. Rather, the issue is whether the seasonal scheduling differences on the basis of gender that *result in unequal treatment* of women in comparison to men is considered disparate treatment. Disparate treatment does not arise from any and all differences in treatment; it occurs only where the offending party *treats some people less favorably* than others because of their race, color, religion, sex, or national origin. **Thus, the reason that scheduling differences properly receive disparate treatment analysis based on facial discrimination is not just because boys and girls are separated, but because they are separated and treated unequally in the scheduling of seasons.**

459 F.3d at 694-95 (internal quotations and citations omitted) (italics in original, bold added).

Following *Communities for Equity's* lead, the Court finds that Plaintiffs have plausibly alleged that their daughters were separated and treated unequally, such that disparate treatment analysis based on facial discrimination is warranted. Among other inequities, Plaintiffs have plausibly alleged that their daughters face disparate treatment based on gender classifications made with respect to: (i) the provision of equipment and supplies; (ii) the availability of an extra school-period for training and practice; (iii) the quality and quantity of coaching; (iv) the quality of training, practice, locker room, and competition facilities; and (v) the public promotion of teams. Given that Plaintiffs have plausibly alleged facts indicating disparate treatment based on facial discrimination,

they do not need to plausibly allege that the District acted with animus in order to maintain their Equal Protection claim. The District's Motion to Dismiss Plaintiffs' Equal Protection Claim for damages is, therefore, **DENIED**.

### B. The District's Motion to Strike

The District moves to strike the reference to 34 C.F.R. § 106.3(a) in Plaintiffs' Complaint. They characterize the reference as a "gratuitous 'pot shot[]' against the employees and patrons of the Fayetteville school system." (Doc. 9, p. 2). Section 106.3(a) instructs that "[i]f the Assistant Secretary finds that a recipient has discriminated against persons on the basis of sex in an education program or activity, such recipient shall take such remedial action as the Assistant Secretary deems necessary to overcome the effects of such discrimination." Plaintiffs' citation to this regulation creates an inference that the District has already been found to have violated Title IX by the Department of Education. As Plaintiffs do not provide any factual basis to suggest that such a finding has ever occurred, the reference to § 106.3(a) is impertinent and immaterial.

Plaintiffs concede as much, responding to the District's Motion by stating that the reference to 34 C.F.R. § 106.3(a) was a typographical error. The correct citation, they clarify, should have been to 34 C.F.R. § 106.3(c). Section 106.3(c) instructs Title IX recipients to engage in self-evaluation: assessing, modifying, and taking appropriate remedial steps to ensure that its programs are in compliance with the Title. 34 C.F.R. §§ 106.3(c)(1)-(3). Unlike § 106.3(a), it does not single out recipients that have already been found to be in violation of Title IX.

Although Plaintiffs have offered to amend their Complaint to correct the citation, The District took the position at the parties' Case Management Hearing that even a corrected citation would be immaterial and impertinent. They think that a corrected reference to § 106.3(c) would imply that the District has been in violation of Title IX since the regulations were enacted. The Court disagrees that a corrected reference to § 106.3(c) would be immaterial and impertinent. Even accepting the District's narrative that Plaintiffs' reference to the regulation constitutes an allegation of decades of discrimination, this is neither impertinent nor immaterial. It would indeed be quite remarkable for this Court to conclude that Plaintiffs' accusation that the District has historically failed to comply with Title IX is immaterial or impertinent *to a case involving allegations that the District has failed to comply with Title IX*.

The Court will, accordingly, find that the Complaint's reference to 34 C.F.R. § 106.3(a) is immaterial and impertinent, as the reference was made in error and without any factual basis. All references to 34 C.F.R. § 106.3(a) in the Complaint shall be stricken and replaced with references to 34 C.F.R. § 106.3(c), which the Court does not find to be impertinent or immaterial.

## IV. CONCLUSION

For the reasons discussed herein, the District's Motion for Partial Dismissal (Doc. 7) is **GRANTED IN PART AND DENIED IN PART**. The Motion is **GRANTED** with respect to Plaintiffs' request for damages under Title IX. The Motion is **DENIED** with respect to Plaintiffs' request for damages under the Equal Protection Clause and 42 U.S.C. § 1983. the District's Motion to Strike (Doc. 9) is **GRANTED IN PART AND**

**DENIED IN PART** and all references to 34 C.F.R. § 106.3(a) shall be stricken and replaced by virtue of this Order with references to 34 C.F.R. § 106.3(c).

**IT IS SO ORDERED** on this 15th day of December, 2015.

/s/ Timothy L. Brooks
TIMOTHY L. BROOKS
UNITED STATES DISTRICT JUDGE